**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION**

CONNOR B., by his next friend, ROCHELLE
VIGURS, et al.,

                        Plaintiffs,

        v.

DEVAL L. PATRICK, et al.,

                        Defendants.

CIVIL ACTION
NO. 10-CV-30073-MAP

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DECERTIFY THE PLAINTIFF CLASS**

THE HON. DEVAL L. PATRICK, GOVERNOR,
DR. JUDYANN BIGBY, SECRETARY OF THE
MASSACHUSETTS EXECUTIVE OFFICE OF HEALTH
AND HUMAN SERVICES, and ANGELO MCCLAIN,
COMMISSIONER OF THE MASSACHUSETTS
DEPARTMENT OF CHILDREN & FAMILIES

By their attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

Robert L. Quinan, Jr., BBO No. 553010
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2554
Robert.Quinan@state.ma.us

## INTRODUCTION

The defendants—Deval Patrick, Governor; Judy Ann Bigby, Secretary of the Executive Office of Health and Human Services; and Angelo McClain, Commissioner of the Department of Children and Families—move this Court, pursuant to Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure, to decertify the Plaintiff class of over 10,000 children currently and prospectively in the foster care custody of the Department of Children and Families ("DCF" or the "Department"). Under *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (June 20, 2011), the Plaintiffs have not "affirmatively demonstrate[d]" a "common contention" that, if adjudicated in their favor, "will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." As such, "they have not established the existence of any common question" as necessary to meet the requirements of Rule 23(a)(2). *Id.* at 2556-57. Similarly, under *Wal-Mart* this action does not meet the requirements of Rule 23(b)(2) because no single injunction or declaratory judgment could provide relief to each member of this class. *Id.* at 2557. This Court must decertify the class because Plaintiffs have failed to demonstrate the existence both of a Department practice or policy that is the common cause of a cognate injury to each class member as well as a single injunction or declaratory judgment that will provide relief to each of the 10,000+ children.

## BACKGROUND:  THE *WAL-MART* DECISION

*Wal-Mart* held that class certification is inappropriate where, as here, a proposed Rule 23(b)(2) class challenges vast numbers of discretionary decisions without demonstrating that a uniform practice or policy underlies the disparate reasons for those decisions—such that judicial review of that practice or policy could settle a dispute central to each of the class members' claims at once. *Id.* at 2551-57. *Wal-Mart* also declares that certification cannot be granted unless the proponent offers "significant proof" of the causal link between an asserted unlawful practice and class-wide injuries. *Id.* at 2553-56. In sum, *Wal-Mart*'s explication of Rule 23's

requirements fatally undermines this Court's February 2011 certification decision.

The Supreme Court's *Wal-Mart* opinion considered whether the certification of the plaintiff class of current and former female employees of Wal-Mart who alleged violations of Title VII was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2). *Id.* at 2547. Plaintiffs did not allege that Wal-Mart had an "express corporate policy" that discriminated against women, but rather that Wal-Mart gave too much discretion to local managers over pay and promotions, which those managers then exercised disproportionately to preclude the advancement and equal pay of women. *Id.* at 2548. Local managers at Wal-Mart are in fact given wide discretion in pay and promotion of hourly and salaried employees. *Id.* at 2547. They may increase hourly wages with limited oversight, and they have discretion to set salaries within ranges. *Id.* Wal-Mart further permits local managers to apply "their own subjective criteria" when selecting candidates for promotion. *Id.*

To show, as required by Rule 23(a)(2), that there were "questions of law or fact common to" *all* class members the *Wal-Mart* plaintiffs submitted three kinds of proof: statistical evidence by two experts regarding pay and promotion disparities between men and women at Wal-Mart, some 120 anecdotal reports of discrimination against female employees, and the testimony of an expert witness, a sociologist who conducted a "social framework analysis" of Wal-Mart's corporate culture and personnel practices. *Id.* at 2549. The expert statistical analysis, performed by both a statistician and a labor economist, consisted of region-by-region regression analyses, "comparing the number of women promoted into management positions with the percentage of women in the available pool of hourly workers." *Id.* at 2555. The "largely uncontested descriptive statistics . . . show that women working in the company's stores are paid less than men in every region and that the salary gap widens over time even for men and women hired into the same jobs at the same time." *Id.* at 2563 (Ginsburg, J. concurring in part and dissenting in part) (internal quotations and citations omitted). Women make up only 33 percent of

management employees despite filling 70 percent of the hourly jobs. *Id.* Relying on this data, the experts concluded that "there are statistically significant disparities between men and women at Wal-Mart . . . [and] these disparities . . . can be explained only by gender discrimination," and that Wal-Mart "promotes a lower percentage of women than its competitors." *Id.* at 2555 (internal quotations and citations omitted). The third expert, a sociologist, used regression analysis to show that the disparities in pay and promotions of women at Wal-Mart "can be explained only by gender discrimination and not by . . . neutral variables." *Id.* at 2564 (Ginsburg, J., concurring and dissenting) (internal quotations and citations omitted).

Despite this evidence, the Supreme Court held that plaintiffs "[had] not established the existence of any common question," *id.* at 2556-57, noting that its "opinion in *Falcon* describes how the commonality issue *must* be approached." *Id.* at 2552-53 (emphasis added). Thus, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 2551, citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). This requirement "does not mean merely that they have all suffered a violation of the same provision of law," but rather requires that the class members have all suffered the same type of injury from an alleged common course of conduct. *Id.* Furthermore, because a "wide gap" exists between an individual's claim of injury and a class of individuals who might be perceived as suffering the same injury, plaintiffs had the burden of bridging the gap with "significant proof that Wal-Mart operated under a general policy of discrimination." *Id.* at 2553 (internal quotations omitted). Plaintiffs' expert sociological report was "worlds away" from "significant proof" because it could not demonstrate what percentage of employment decisions were based on stereotyped thinking. *Id.* at 2554. Their statistical proof was also "insufficient to establish that plaintiffs' theory can be proved on a classwide basis" because it could not "establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends." *Id.* at 2555. In fact, "[m]erely showing that Wal-Mart's policy of discretion has

produced an overall sex-based disparity [would] not suffice" to "demonstrate that commonality of issue exists" because plaintiffs "[had] identified no 'specific [challenged] employment practice'—much less one that ties all their 1.5 million claims together." *Id.* at 2555-56. Moreover, their "anecdotal evidence . . . [was] too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory." *Id.* at 2556. By failing to provide "convincing proof of a companywide discriminatory pay and promotion policy," plaintiffs could not demonstrate the existence of "even a single common question." *Id.*

In addition to failing to satisfy the requirements of Rule 23(a), the Court further held that plaintiffs could not claim monetary relief under Rule 23(b)(2) where it "is not incidental to the injunctive or declaratory relief." *Id.* at 2557. Plaintiffs' claims for backpay thus failed because "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.*, citing Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009). Because no "single injunction or declaratory judgment would provide relief to each member of the class," certification under Rule 23(b)(2) was improper. *Id.*

## ARGUMENT

I.   ***WAL-MART* DEMONSTRATES THAT THIS COURT'S CERTIFICATION OF THE PLAINTIFF CLASS WAS IMPROPER.**

*Wal-Mart* announced a rejection of rubber-stamp or "defer until later" analysis of class certification requirements.[1]   By stressing the limited application of Rule 23, the Court emphasized the importance of upfront "rigorous analysis" by the trial court to ensure that the proposed plaintiff class actually conforms with Rule 23. *See Wal-Mart*, at 2551-53. Here, such

---

[1]  Commonality is no longer a "low bar" with "permissive application."  Class Certification Memorandum and Order ("Class Cert. Mem. and Order"), Docket no. 49, at p. 9 [quoting *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F. 3d 6, 17 (1st Cir. 2008)].

"rigorous analysis" would show that Plaintiffs have failed to establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Furthermore, no single injunction or declaratory judgment could provide relief to every one of the 8,000 or so children presently in the Plaintiff class or the thousands more expected to join the class prior to trial, as required by Rule 23(b)(2). Because Plaintiffs have failed to meet their strict burden of "affirmatively demonstrat[ing]" that each of the requirements in Rules 23(a) and 23(b)(2) continue to be satisfied, this Court should decertify the class. *Wal-Mart*, 131 S.Ct. at 2551; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

### A. The Plaintiffs have failed to establish under Rule 23(a)(2) that "there are questions of law or fact common to the class."

The dissimilarities among the 8,000 or so current members of the Plaintiff class[2] prove that no single common question exists that could generate a common answer that would resolve an issue central to the litigation. *See Wal-Mart,* 131 S.Ct. at 2551, citing Nagareda, *supra*, at 132. Because "[a]ny competently crafted class complaint literally raises common 'questions,'" *id.*, citing Nagareda, *supra*, at 131-32, "[r]eciting . . . questions is not sufficient to obtain class certification." *Id.* Rather, Plaintiffs "must affirmatively demonstrate" a "common contention" that is "capable of classwide resolution." *Id.* That test is met where "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Id.*[3]

---

[2] For discussion of those dissimilarities, see Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Def. Class Cert. Opp."), Docket no. 31-1, at 25-29, and 33.

[3] The Court explained this distinction in *Wal-Mart* by contrasting, for example, the questions "Do our managers have discretion over pay?" and "Is that an unlawful employment practice?" with "the assertion of discriminatory bias on the part of the same supervisor." *Wal-Mart*, 131 S.Ct. at 2551. The former merely raises questions that implicate the class, whereas determination of the latter's truth or falsity will — in one stroke — resolve an issue that is central to the validity of the class members' claims. *Id.*

Here, merely through unverified assertions in a complaint,[4] Plaintiffs have set forth facially common allegations that abstractly question whether the Department unlawfully exposes children to a risk of harm.  Plaintiffs' claims require an examination of discretionary decisions made in individual circumstances, however, making it impossible for Plaintiffs to assert a "common contention" without identifying a Department-wide policy that ties those decisions together and causes the "same injury" to all class members.  *Id.*  For example, Plaintiffs submit as a "[q]uestion of fact common to the class" whether the Department fails to provide class members "appropriate" foster care placements.  Plaintiffs' Complaint, ¶ 150(a).  Social workers have discretion to determine which placement is "appropriate" for any given child, and an "appropriate" placement will be different for each child.  In fact, one named plaintiff argues that he was improperly placed in a residential facility while another argues that he should have been placed in such a facility.  *See* Def. Class Cert. Opp. at 25-26.  Therefore, the resolution of one class member's claim that he or she was placed in an inappropriate placement will do nothing to resolve the same issue for another class member's same claim without a specific Department-wide policy linking the two discretionary decisions.  *See Wal-Mart*, 131 S.Ct. at 2551.

Plaintiffs thus fail to assert a "common contention" because they do not allege that the same Department policy or practice causes each class member to have "suffered the same injury."  Plaintiffs baldly assert that the Department "fails to protect children from abuse and neglect in foster care," for example, rather than asserting specifically that the Department has a practice of failing to examine CORI records for prospective foster parents, putting every class member at imminent risk of being placed in an unsafe, inappropriate placement.  Complaint, ¶ 158(a).  Moreover, Plaintiffs do not allege that each class member has, in fact, "suffered the

---

[4] "Certification based simply on the assertions in the complaint . . . exhibits a troubling circularity.  The legitimacy of aggregation as a procedural matter would stem from the shaping of proof that presupposes the very aggregate unit whose propriety the court is to assess." Nagareda, *supra*, at 126.

same injury"; indeed, the dissimilarities within the plaintiff class—as described in detail in the Complaint—preclude Plaintiffs from doing so.   Accordingly, these dissimilarities "impede the generation of common answers."  *Wal-Mart*, 131 S.Ct. at 2551, citing Nagareda, *supra*, at 132. Because Plaintiffs have not made a "common contention" that, when resolved, will generate "common answers," they have not satisfied the commonality requirement of Rule 23(a).[5]

> **1. Plaintiffs Have Failed to Identify a Department Policy or Practice that Binds All of the Discretionary Decisions Regarding Each Child's Individual Circumstances.**

Plaintiffs have failed to demonstrate that a specific Department policy or practice was the common cause of the different injuries allegedly suffered even by the named plaintiffs, let alone the whole class.  Although Plaintiffs are not required to prove the merits of their case at the class certification stage, "[f]requently [the trial court's] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart*, 131 S.Ct. at 2551.  Here, as in *Wal-Mart*, "proof of commonality necessarily overlaps with [Plaintiffs'] merits contention" because of the nature of the claims themselves.  *Id.* at 2552.  As explained below, Plaintiffs' claims by their very nature require examination of individual circumstances; they require consideration of whether particular decisions, or specific actions — and not the application of a general Department policy — harmed foster children.   Because Plaintiffs have failed to demonstrate some common cause tying their alleged injuries together, they cannot meet the commonality requirements of Rule 23.

**Substantive Due Process**.   To prove their substantive due process claim (Count I), "Plaintiffs must show that Defendants' conduct represented a substantial departure from accepted professional judgment, which deprived them of conditions of reasonable care and

---

[5] Plaintiffs further fail to meet the typicality requirement under Rule 23(a) for similar reasons, because typicality and commonality tend to merge. *Wal-Mart*, 131 S.Ct. at 2551, n.5; *see also* Def. Class Cert. Opp. at 16-24.

safety, *and* that such conduct shocks the conscience."[6]   Memorandum and Order on Motion to

Dismiss ("Memo and Order"), Docket no. 43, at 42 (emphasis in original).   In resolving this

claim, the "crux of the inquiry," *Wal-Mart*, 131 S.Ct. at 2552, is the circumstances in which the

Department exercised its professional judgment, because "a substantial departure from accepted

professional judgment may shock the conscience under some circumstances but not others."

Memo and Order, at 41; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (a

substantive due process claim invariably "demands an exact analysis of circumstances before any

abuse of power is condemned").

For example, Plaintiffs allege that the Department "places children in unsuitable or

inappropriate foster homes that cannot properly care for them" and "unnecessarily moves

children among multiple foster care placements."   Plaintiffs' Complaint, ¶ 158(b)-(c); *see also id.*

at ¶ 150(a).   Plaintiffs explain, however, that "[i]n selecting a particular foster care placement or

institution for a child, DCF is obligated to assess the child's individual needs and to match those

needs to a suitable and safe placement."   *Id.* at ¶ 227.   Each placement decision, such as where

to place a boy the first night he is in care, whether to place him in an institutional setting, and

when to move him to a new placement, therefore, depends on the boy's "individual needs" as

assessed by his social worker.   There are also many good reasons to change a child's placement,

including moving a child into a potential adoptive home or kinship home, reuniting a child with

his or her parents, or placing siblings together.   An evaluation of whether one social worker's

decision  regarding where to place a child "shocks the conscience" will require an examination

of the particular circumstances in which the social worker made that decision.

---

[6] Deliberate indifference, at the least, is also a required element of a substantive due process
claim.  *J.R. v. Gloria*, 593 F.3d 73, 81 (1st Cir. 2010).   Moreover, "the burden to show state
conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of
'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations
resulting from bad faith' to 'something more egregious and more extreme.'"  *Id.* at 80 (internal
citations omitted).

Plaintiffs also allege that the Department "fails to provide needed medical, dental, mental health, educational and other services necessary for children's safety, permanency and well-being." *Id.* at ¶ 158(e); *see also id.* at ¶150(b).  Clearly the services needed by each child will be different, and each child's individual social worker, and not some central actor or named defendant, will be making the decision regarding which services to choose for him or her.

**Parent and sibling contact**.  A similar individualized inquiry is required to resolve whether the Department denied class members "any meaningful contact with parents or siblings" (Count II).  Memo and Order, at 45.  Plaintiffs allege that the Department fails "to ensure that children in foster care are regularly able to visit with their parents and siblings."  Plaintiffs' Complaint, ¶ 198.  Especially because all of the class members came into the custody of the Department because of parental abuse and neglect, this Court's future determination of whether meaningful contact with those past abusers was denied must depend on the circumstances of each individual case.  Furthermore, such a determination will require an examination of the circumstances of the visitation schedule for an individual child given that visits may be cancelled or rescheduled for a variety of reasons.  *See id.* at ¶ 80 (one named plaintiff's parents stopped coming to scheduled visits).  A child's social worker may have the discretion to determine whether or not postponing or cancelling a visit is appropriate given a child and parent's circumstances.  Whether meaningful contact between siblings was denied will also depend on individual familial circumstances, particularly given that not every member of the class even has siblings, and that some members may have been abused by their siblings in the past.

**Procedural Due Process**.  Finally, a fact-based individualized inquiry is necessary both to determine what actions were "in the best interests of the child" and whether the Department has "provided sufficient procedural safeguards before depriving Plaintiffs of [those] protected

interests" (Count IV).  Memo and Order, at 53, 55.[7]  Resolving Plaintiffs' procedural due process

claim is thus a "fact-bound decision" that will depend on the circumstances of individual

situations.  *Id.* at 55.

For example, Plaintiffs allege within their procedural due process claim that "DCF often

does not place children with kin even when appropriate kin placements are available," and that

"DCF frequently finds a potential kin resource only after initial placement of a child with a

stranger foster parent."   Plaintiffs' Complaint, ¶¶ 250-51.   Whether such a placement is

appropriate for a child will, again, depend on the circumstances surrounding the prospective

kinship placement.   Any determination that a social worker did not place a child in an

"appropriate" kinship placement or did not find a potential kinship placement in a reasonable

amount of time must be preceded by a careful examination of the handling of the case.  Due

process, after all, is "not a technical conception with a fixed conception unrelated to time, place

and circumstances[.]"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).[8]

Because these claims require examination of the individual circumstances, it follows that,

as in *Wal-Mart*, "proof of commonality necessarily overlaps with [Plaintiffs'] merits contention."

*Wal-Mart*, 131 S.Ct. at 2552.  In light of how often the Department's employees and agents

make decisions about the tens of thousands of children under DCF supervision, Plaintiffs "wish

---

[7] Defendants repeat their prior assertion that Plaintiffs' claims in Count III can be resolved
without the need for a class.  *See* Def. Class Cert. Opp. at 37.

[8] "Given the intensely fact-based nature of the inquiry [which is generally inconsistent with
class-based litigation], the Supreme Court has chastised courts that have adopted a 'sweeping
and categorical' approach to due process.  *Gilbert v. Homer*, 520 U.S. 924, 931 (1997)."
*Daskalea v. Washington Humane Society*, --- F.R.D. ---, 2011 WL 3555761 (D.D.C. Aug. 10,
2011).  For this reason, in perhaps the first district court decision to apply *Wal-Mart* to a motion
for class certification on a due process claim, Judge Kollar-Kotelly ruled that certification of a
procedural due process claim would be "unworkable" in light of (1) the "considerable discretion"
conferred on defendant's employees (akin to the discretion accorded DCF social workers); (2)
the variable "magnitude of the deprivation at issue"; and (3) other "important variations within
the class," including the nature of the process actually afforded to class members.  *Id.* at **11-13.

to sue about literally millions [or at least hundreds of thousands] of [Department] decisions at once." *Id.* "[I]t will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question [*why was I harmed*]" because Plaintiffs have not established "some glue holding the alleged [*circumstances* surrounding] . . . those decisions together." *Id.*

Plaintiffs have failed to supply the "glue" holding these individual determinations together because they have failed to show a common cause linking the individualized professional judgments with the same injury to all class members. The fact that Plaintiffs have not established any common link between each individual class member's harm or risk of harm and the Department's agents' exercise of professional judgment undermines any argument that Plaintiffs have satisfied the commonality requirement of Rule 23(a)(2). As the Court highlighted in *Falcon* and later cited in *Wal-Mart*:

> Conceptually there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* at 2553, citing *Falcon*, 457 U.S. at 157-58. Because Plaintiffs do not allege that Defendants employ a specific policy aimed at depriving the class members of reasonable care and safety in a way that shocks the conscience, they can only bridge this conceptual gap with "significant proof"[9] that Defendants "[operate] under a general policy of [unconstitutional conduct]" that is

---

[9] Because Plaintiffs rely solely on anecdotes and statistics that are insufficient to infer that the Department operates under an intentionally harmful common policy, *Wal-Mart*, 131 S.Ct. at 2553-57, "significant proof" is "entirely absent here." *Id.* at 2553. Therefore, this Court is not required to determine how much proof is necessary to satisfy the standard. *Wal-Mart* implies that the terms "significant" and "convincing" are interchangeable, explaining that plaintiffs were required to provide "'significant proof' that Wal-Mart 'operated under a general policy of discrimination,'" *id.* at 2553, in order to establish commonality, and that "[b]ecause plaintiffs

(footnote continues on the next page . . . )

the common cause of the same injury to the class members. *Id.* Plaintiffs thus must *now* present "significant proof" that Defendants' mode of operation, expressed through at least one common practice, (1) represents a substantial departure from accepted professional judgment that shocks the conscience, (2) deprives all class members of any meaningful contact with their parents or siblings, and (3) reflects a failure to take federally-mandated actions to protect the best interests of each class member. *See id.*

Although Plaintiffs do allege that the Department engages in "a common course of conduct" toward class members, Plaintiffs' Class Cert. Memo at 11, and operates "a system in which . . . harm is inevitable," *id.* at 14, such overly broad allegations alone do nothing to bridge the conceptual gap. "Mere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). "Here, rather than adequately advancing a discrete question of law, plaintiffs merely attempt to broadly conflate a variety of claims to establish commonality via an allegation of 'systematic failures.'"[10] *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999). This Court cannot read Plaintiffs' "allegation of systemic failures

---

provide no convincing proof of a companywide discriminatory pay and promotion policy, . . . they have not established the existence of any common question." *Id.* at 2556-57. Furthermore, two Circuit Courts have held that the "preponderance of the evidence" standard of proof applies to the Rule 23 requirements. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) ("the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements").

[10] As the Tenth Circuit explained in *J.B. ex rel. Hart v. Valdez*, a contrasting example where a general policy established commonality in the child welfare context is *Wilder v. Bernstein,* a class action in which all class members, black Protestant children, claimed the New York system denied them placements specifically because of their race and religion. 186 F.3d at 1289, citing *Wilder v. Bernstein*, 499 F.Supp. 980, 982 (S.D.N.Y.1980).

as a moniker for meeting the class action requirements." *Id.*[11]  Essentially, without *proof* of

some common causal link tying unlawful general practices, condoned by the named

defendants,[12] to the same injury for all class members, there can be no commonality where, as

here, the determinations regarding whether Defendants violated the class members' rights must

otherwise be made through examination of the individual circumstances.  *See Wal-Mart*, 131

S.Ct. at  2555-56 (because employment decisions are discretionary, Plaintiffs must identify a

"specific employment practice" "that ties all their 1.5 million claims together" in order to satisfy

commonality); *see also Crosby v. Social Security Administration*, 796 F.2d 576, 580 (1st Cir.

1986) (a class cannot be certified where what is reasonable or permissible on the part of a

government defendant "must necessarily vary from claimant to claimant").

Plaintiffs have not established such a common causal link.  They have produced no actual

evidence that demonstrates "whether .5 percent or 95 percent" of the alleged harm to class

members might be the result of a particular, unlawful Department practice that truly shocks the

---

[11] *See also Reinholdson v. State of Minnesota*, CIV. 02-795 ADM/AJB, 2002 WL 31026580 (D. Minn. Sept. 9, 2002), *order modified and remanded sub nom. Reinholdson v. Minnesota*, 346 F.3d 847 (8th Cir. 2003) ("The reciting of the word 'systemic' in mantra-like fashion throughout the briefing and argument does not overcome the prerequisites to class certification.") Potentially "lurking behind [Plaintiffs'] rather vague and conclusory [allegations]"—if in fact there is any merit whatsoever to Plaintiffs' allegations of unconstitutional Department practices, which Defendants strenuously dispute—might lie "a wide variety of more discrete and particularized practices that could conceivably serve as the foundation for [Defendants'] liability." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 326 (D.D.C. 2011) (municipal law case).  But Plaintiffs cannot simply "conflate a wide variety of practices and impute them to the class as a whole by collecting them under a single, unilluminating umbrella of 'systemic' failures." *Id.*  "[R]ather, Plaintiffs must first identify the 'policy or custom' they contend violates the dictates of procedural [and substantive] due process and then establish that the 'policy or custom' is common to the class," which they plainly have not done*.  Id.*

[12]  *See Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989).  An alleged "custom" or practice that has not been formally approved by defendant policymakers subjects a governmental entity to liability under § 1983 only if the plaintiff proves acquiescence by the policymakers and that the relevant practice is so widespread as to have "the force of law."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

conscience.[13]  *Wal-Mart*, 131 S.Ct. at 2553 (internal quotations omitted).[14]  Plaintiffs have not even identified a common cause—i.e., one Department policy or practice—for the injuries suffered by the six named Plaintiffs.  *See* Def. Class Cert. Opp. at 11-16.  For example, they do *not* allege that the different harms suffered by the six named Plaintiffs were all due to the fact that each of their social workers was inappropriately trained or was overly burdened by an improperly high caseload.  Their Complaint states nothing about the training, experience, or caseload of any of the named Plaintiff's social workers when those workers used their discretion to make decisions that allegedly resulted in harm to the named Plaintiffs.  Plaintiffs' failure to specify whether high caseloads or any other one of their multiple abstract systemic allegations caused the harms to all of the named Plaintiffs demonstrates that Plaintiffs are improperly attempting to establish commonality through a conflation of assumptions rather than by raising a valid common contention.  *See* Plaintiffs' Complaint, ¶ 215 (listing a number of abstract allegations without linking any of them to the alleged harm suffered by all named plaintiffs).

Moreover, because Plaintiffs' allegations are so improperly abstruse, Defendants have been forced to collect over *nine million pages* of documentation to ensure that they have gathered, in response to Plaintiffs' discovery demands, all documents related to any of the Department's "policies and practices."  *See* Affidavit of James Dehnke (¶¶ 7-9), attached as Exhibit A to Defendants' concomitantly-filed Motion to Stay Discovery pending a ruling on this

---

[13] This Court appears to have misunderstood the Defendants' argument regarding Plaintiffs' failures to present sufficient evidence to prove commonality by stating that Defendants "demand evidence of the harm that has befallen each member comprising this putative class."  Class Cert. Mem. and Order at 15.  Defendants do not demand such evidence.  Rather, Plaintiffs must submit convincing evidence of the common cause of the harm that has befallen each class member, which they have not done.  *Wal-Mart*, 131 S.Ct. at 2556-57.

[14] In examining class actions where the proposed common issue is "a broad and sweeping practice or policy," "courts have engaged in a more searching inquiry" to determine if class certification requirements have been met.  *Lightfoot*, 273 F.R.D. at 328.  Whenever plaintiffs, "through artful pleading," have only hinted at the contours of the challenged policy or custom, certification contravenes Rule 23 if plaintiffs have not first been put to the test of showing a specific policy or practice in actual operation.  *Id.* at 326.

motion to decertify. Unless Plaintiffs establish commonality through an alleged common cause, this case will remain unmanageable and overly burdensome for the parties, which alone may require decertification. *Central Wesley College v. W.R. Grace & Co.*, 6 F.3d 177, 189-190 (4th Cir. 1993).

In fact, Plaintiffs' general allegations cannot tie a Department practice to all of the named plaintiffs or the class as a whole because Plaintiffs ignore the crucial facts that the class members come into Departmental custody already suffering unique harms and that the Department affords substantial discretion to its social workers to utilize their best professional judgment given the unique set of circumstances surrounding each child in order to address those individual harms. *See Foreman v. Heineman*, 240 F.R.D. 456, 508 (D.Neb. 2007) (allegations of systemic failures insufficient to show commonality where the class is highly diverse in terms of needed services).[15] Thus, precisely as in Wal-Mart, a policy permitting social workers to exercise appropriate discretion in making decisions as to each class member in the context of their individual circumstances shows the near impossibility of satisfying commonality. In any event, Plaintiffs "have not identified a common mode of exercising discretion that pervades the entire [Department]." *Wal-Mart*, 131 S.Ct. at 2554-55. Without a common policy linking all of the social workers' discretionary determinations, "it is quite unbelievable that all [social workers] would exercise their discretion in a common way." *Id.* at 2555. Because each social worker makes decisions regarding each class member based on the class member's individual set of circumstances, "demonstrating the invalidity of one [social worker's] use of discretion will do nothing to demonstrate the invalidity of another's." *Id.* at 2554.[16]

---

[15] *See also Shook v. Bd. of County Comm'rs*, 543 F.3d 597, 614 (10th Cir. 2008) (where "factual differences between class members [would] require different standards of conduct for undefined groups within the class," certification not appropriate).

[16] Furthermore, the actions of any one, possibly misguided, social worker cannot impose liability on the Department on a *respondeat superior* theory because direct causation is a necessary
(footnote continues on the next page . . .)

In view of the individual circumstances of each class member, and the individual discretion exercised in their cases, Plaintiffs cannot "show that all the [class members'] . . . claims will in fact depend on the answers to common questions." *Id.* The dissimilarities between the individual circumstances of each class member regarding his or her goals, physical and mental health needs, and length of stay in Department custody require Plaintiffs to offer proof that at least one Department-wide policy or practice causes the same injury to all of the class members in order to establish commonality. In short, Plaintiffs have identified no specific Department policy or practice that "ties all their [10,000+] claims together." *Id.* at 2555-56. And because Plaintiffs have failed to provide proof of a Department-wide, conscience-shocking practice, "they have not established the existence of any common question." *Id.* at 2556-57.[17]

### 2. Plaintiff Class Members Have Not Suffered the Same Injury Resulting From A Specific Department Practice or Policy.

Plaintiffs' failure to assert a common cause for their injuries is matched by their failure "to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 2551, citing *Falcon*, 457 U.S. at 157. "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal for & by Kanter v.*

---

element of any § 1983 claim. *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1368 (Scalia, J., concurring), quoting *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404-405 (1997). The lack of such *respondeat superior* liability further emphasizes the necessity of requiring Plaintiffs to identify a specific practice knowingly condoned by the named defendants in order to demonstrate a direct causal link between the Department's actions and the deprivation of the constitutional rights of the class members. *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010).

[17] Even if Plaintiffs could prove a Department-wide, conscience-shocking practice, the purely prospective character of the injunctive and declaratory relief they seek (under *Ex Parte Young*) renders certification of a class action unnecessary for the reasons stated in *Dionne v. Bouley*, 757 F.2d 1344 (1st Cir. 1985).

*Casey*, 43 F.3d 48, 58 (3d Cir. 1994), citing *Falcon*, 457 U.S. at 157-59.[18]   Thus, because Plaintiffs have failed to "prove that there is a pervasive violation" within the Department, they cannot show "that the various injuries alleged all stem from that common violation." *Id.* Plaintiffs in fact concede that the Department "may have harmed Plaintiff Children in different ways."  Plaintiffs' Class Cert. Memo at 14.  Indeed, Plaintiffs do not allege that even the six named Plaintiffs have all suffered any one of the specified alleged harms outlined in the Complaint.  *See* Plaintiffs' Sur-Reply Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 4-6 (generally identifying only two named Plaintiffs, and never all six, for each of the listed alleged harms).  Plaintiffs perforce have failed to establish that all 10,000+ class members have suffered the same injury.

Applying this Court's own metaphor for summarizing the Complaint, each one of the thousands of children may have suffered a dissimilar injury (if he or she suffered any injury at all) due to widely divergent causes.  *See* Transcript of Class Cert. Hearing ("Transcript"), at 30. This Court described this case as presenting a "creaky building" within which each child is being hurt in a different way.  *Id.*  ("some children . . . are being hurt because they're getting hit on the head with a brick; some children are getting hurt because they're falling through the floor; some children are getting hurt because they're traumatized seeing other children get hurt; some children are having nightmares.").[19]  Each of these different injuries would have its own cause.

---

[18] Even if *Baby Neal* relaxed somewhat the "same injury" test under the typicality requirement of Rule 23(a), *Wal-Mart* explains that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have all suffered the same injury.'"  *Wal-Mart*, 131 S.Ct. at 2551, citing *Falcon*, 457 U.S. at 157.  Whether examined under the typicality or commonality requirement, however, "[t]o qualify for classwide injunctive relief, class members must have been harmed in essentially the same way."  *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 524 (5th Cir. 2007).

[19] Of course, negligent "failure to maintain the building" is not at all analogous to the high burden facing Plaintiffs to prove on the merits that the Department violated their substantive due process rights.  A substantive due process claim is not actionable unless plaintiffs can establish that state officials deliberately engaged in "conscience-shocking" conduct, requiring "'stunning' evidence of 'arbitrariness and caprice'" of an "'egregious'" nature.  *J.R.*, 593 F.3d at 79-80.

By contrast, *Wal-Mart* envisions class certification only if an identified unlawful practice (such as one undermining floor safety) caused the "same injury" to all class members (even if some are tripping on uneven floorboards while others are falling through them). Thus, the only potential way Plaintiffs could establish commonality in this metaphorical framework would be to demonstrate that the "creaky building" had collapsed to the ground, injuring each of the 8,000 current class members in like fashion. Because Plaintiffs have not identified an unlawful policy or practice that pervades the entire Department, they cannot demonstrate that the class members have suffered the same injuries from that common cause.

Instead of being connected by a common Department policy, the named Plaintiffs' alleged injuries are united solely by Plaintiffs' bare assertion that all of these different injuries result from the Department's alleged violations of the law. In fact all of Plaintiffs' named "[q]uestions of law common to the class" simply ask whether the Department's "actions or inactions violate" Plaintiffs' rights under the provisions of law in each of the four counts in the Complaint. Plaintiffs' Complaint, ¶ 151. *Wal-Mart* now expressly precludes reliance on such an abstract contention—*i.e.*, that each member of the class has "suffered a violation of the same provision of law"—to demonstrate commonality. *Wal-Mart*, 131 S.Ct. at 2551.[20]

Furthermore, the fact that each child is in foster care custody is also insufficient to establish commonality. *See id.* (the question "Do all of us plaintiffs indeed work for Wal-Mart?" is insufficient to establish commonality); *see also id.* at 2557 (commonality not established where plaintiffs "have little in common but their sex and this lawsuit.") (internal citations omitted). Thus, Plaintiffs do not satisfy commonality merely by stating that "[e]ach child relies on Defendants for child welfare placement, services and permanency, and is dependent on

---

[20] The same prohibition applies even more forcefully to a contention that "all class members are *subject* to the same harm." Class Cert. Mem. and Order at 16, citing Fed. R. Civ. P. 23(b)(2), 1966 Amendment Advisory Committee Note. Plaintiffs cannot establish commonality, post-*Wal-Mart*, by merely asserting that all class members are subject to potential harms flowing from the Department's alleged "violation of the same provision of law." *Wal-Mart*, 131 S.Ct. at 2551.

Case 3:10-cv-30073-MAP  Document 68  Filed 09/06/11  Page 20 of 23

Defendants for his or her basic safety and well-being." Plaintiffs' Complaint, ¶ 149. By failing to assert more than the mere fact that each class member is in foster care custody and has allegedly suffered from the Department's "violation of the same provision of law," Plaintiffs have failed to demonstrate how each class member has "suffered the same injury" and consequently have failed to establish commonality. *Wal-Mart*, 131 S.Ct. at 2551.

### B. Plaintiffs' Claims Cannot Be Remedied by a Single Injunction or Declaratory Judgment.

Plaintiffs have also failed to satisfy the requirement of Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b)(2) ("A class action may be maintained if Rule 23(a) is satisfied and if . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 31 S.Ct. at 2557, citing Nagareda, *supra* at 132. No single injunction or declaratory judgment could provide relief to each member of this class, particularly given the conflicting interests of each class member.[21] Cohesiveness is absent where the "resolution of a 'common' legal issue is dependent on factual determinations that will be different for each putative class plaintiff." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010). Hence this Court should decertify the Plaintiff class because Plaintiffs have failed to satisfy Rule 23(b)(2).

Rule 23(b)(2) is not meant to capture this plaintiff class. Although the Rule "stems from equity practice," *Wal-Mart*, 131 S.Ct. at 2557, citing *Amchem*, 521 U.S. at 613, the prototypical civil rights cases that the Rule was designed to include involved "challenges to racial segregation—conduct that was remedied by a single classwide order." *Wal-Mart*, 131 S.Ct. at

---

[21] Defendants incorporate herein the arguments made in Def. Class Cert. Opp. at 23-30.

2558.  Here, no single classwide order could remedy the alleged harms suffered by each class member because each child in foster care has different needs for services, placements, visitation, etc.[22]  The injuries allegedly suffered by all of the class members are thus so varied that no single remedy could provide relief.  For example, Plaintiffs allege that class members are injured both by not being "placed in a more restrictive and structured foster care setting such as a residential treatment center" and "[c]onversely" by not being returned "to more family-like settings when they are ready."  Plaintiffs' Complaint, at ¶ 177.  Class members are also injured both by not being reunited with their families safely and by not being provided "with an adoptive or other permanent family when [the Department] finds that safe reunification is not possible."  *Id.* at ¶ 158(d).  Even the named Plaintiffs themselves would request opposite forms of relief.  *See* Def. Class Cert. Opp. at 25-26 (one named Plaintiff argues that he was improperly placed in a residential facility while another argues that he should have been placed in such a facility). Furthermore, the interests of the named Plaintiffs whose parents' rights have been terminated and who require expensive specialized care are in conflict with the interests of the vast majority (over 80%) of the class members who benefit the most from basic family preservation services. Plaintiffs must be deterred from framing their proposed relief at such a high level of abstraction and generality so as to embrace the whole kaleidoscope of claims class members could assert because otherwise the requirements of Rule 23(b)(2) would be rendered meaningless.

In fact, the only possible way to redress all of the harms allegedly suffered by class members would be simply to require the entire Department to be rebuilt from the ground up,

---

[22] "[I]f redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members or groups of class members, the suit could become unmanageable and little value would be gained in proceeding as a class action." *Shook*, 543 F.3d at 604 (internal quotations and citations omitted).  The problem of unmanageability is further compounded by the fact that the class includes future children in the Department's custody, which means that enforcing any injunction will require "monitoring changes to those characteristics over time" as well as a "wealth of information about the class not necessary in many other Rule 23(b)(2) class actions." *Id.* at 606.

which, in effect, asks this Court to take ownership of it.  This is exactly what Plaintiffs have asked this Court to do, to certify the class simply because, supposedly, it is "possible to make the Commonwealth's system far better than it is."  Transcript at 33.[23]  Plaintiffs cannot satisfy their burden under Rule 23(b)(2) by asking this Court to issue an injunction requiring the Department "to do better."  Such "sweeping injunctive relief" "would require [this Court] to mandate and monitor detailed programs governing nearly every facet of the State's operation of [the Department]."  *Elizabeth M. v. Montenez*, 458 F.3d 779, 783 (8th Cir. 2006).  This Court "may not lightly assume this power" because "[f]ederal courts operate according to institutional rules and procedures that are poorly suited to the management of state agencies."  *Id.* at 784 (internal citations and quotations omitted).  "Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."  *Id.,* citing *Rizzo v. Goode*, 423 U.S. 362, 378 (1976).

In finding that the Plaintiff class satisfied Rule 23(b)(2), this Court relied on the fact that "[i]t is not uncommon for courts in this circuit to certify class actions in which alleged systemic deficiencies resulted in harms that manifested themselves differently among different segments of the plaintiff class."  Class Cert. Mem. and Order at 26 (internal citations omitted).  This Court similarly relied on other jurisdictions' certification of classes of foster children.  *Id.*  Particularly given the lack of in-depth analysis of Rule 23(b)(2) satisfaction in those cases, such reliance cannot be maintained in the wake of *Wal-Mart*.  *See* Def. Class Cert. Opp. at 30, n.21.  Even if, *arguendo*, Plaintiffs could have satisfied Rule 23(b)(2) before *Wal-Mart* by simply "propos[ing] several forms of injunctive relief that would benefit the entire class," Class Cert. Mem. and Order at 25, now they must demonstrate that "a *single* injunction or declaratory judgment would

---

[23]    *See also* Plaintiffs' prayer for relief in the Complaint at 70 (¶ e. iii.), calling for "[a]n assessment [to] be conducted by qualified professionals to determine the need for additional services and placements . . . ."

provide *relief* to each member of the class." *Wal-Mart*, 131 S.Ct. at 2557 (emphasis added).

Plaintiffs have not demonstrated that such a "single classwide order" could ever be fashioned

that would remedy the alleged harms suffered by every member of the class. *Id.* at 2557-58.

Therefore, Plaintiffs have not satisfied their burden under Rule 23(b)(2), and this Court should

decertify the class.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court act now to

decertify the Plaintiff class.

> Respectfully submitted,
>
> THE HON. DEVAL L. PATRICK,
> GOVERNOR, SECRETARY JUDYANN
> BIGBY, AND COMMISSIONER ANGELO
> MCCLAIN,
>
> By their attorney,
>
> MARTHA COAKLEY
> ATTORNEY GENERAL
>
>
> /s/ Robert L. Quinan, Jr._____
> Robert L. Quinan, Jr., BBO No. 553010
> Assistant Attorney General
> Office of the Attorney General
> One Ashburton Place
> Boston, MA 02108
> (617) 963-2554
> Robert.Quinan@state.ma.us

September 6, 2011

### Certificate of Service

I hereby certify that the above memorandum was filed through the Electronic Case Filing
(ECF) system on September 6, 2011, and thus copies will be sent electronically to plaintiffs'
counsel, who are identified as registered participants on the Court's Notice of Electronic Filing.

> /s/ Robert L. Quinan, Jr._____
> Robert L. Quinan, Jr.