UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| CONNOR B., by his next friend, Rochelle Vigurs, et al., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>DEVAL L. PATRICK, in his official capacity as Governor of the Commonwealth of Massachusetts, et al.,<br><br>    Defendants. | C.A. No. 3:10-cv-30073 (MAP) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DECERTIFY THE PLAINTIFF CLASS**

    Defendants have moved to decertify the Plaintiff Class based upon an overbroad and erroneous interpretation of the Supreme Court decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). The holding in *Wal-Mart* disturbs not a single authority relied on by this Court in certifying the Plaintiff Class. Moreover, *Wal-Mart* is readily distinguishable from the instant action both in terms of its underlying facts and legal claims. Defendants fail to demonstrate any facts or circumstances justifying their attempt to revisit this Court's well-reasoned order certifying the Plaintiff Class.

    Plaintiffs filed their Motion for Class Certification and Appointment of Class Counsel on April 15, 2010 (Dkt. No. 2). Some seven months later, on November 10, 2010, Defendants filed their opposition to Plaintiffs' motion (Dkt. No. 32), having first taken discovery on class certification issues – including the depositions of the five Next Friends. Plaintiffs replied on November 17, 2010 (Dkt. No. 37). The Court heard oral argument on February 4, 2011 and

issued its Memorandum and Order certifying the class and appointing class counsel on February 28, 2011. *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288 (D. Mass. 2011) ("Certification Order"). Defendants did not appeal.

Nothing in the *Wal-Mart* decision calls into question the sound reasoning of this Court in its Certification Order or the well-established precedent underlying that order. Yet, relying solely on *Wal-Mart* as a basis for revisiting certification of the Plaintiff Class, Defendants now seek to recycle the same flawed arguments already carefully considered and rejected by this Court. First, Defendants again assert that Plaintiffs challenge individual, case-specific decisions made by Department of Children and Families ("DCF") caseworkers, even though Plaintiffs' Complaint clearly focuses on overarching systemic deficiencies that undermine DCF's ability to assure the basic safety and well-being of all children in its foster care custody. Plaintiffs have averred, among other things:

- That excessive caseloads are denying DCF caseworkers adequate time and opportunity to provide even minimally necessary supervision and care to their assigned children;

- That an insufficient array of foster family homes is preventing DCF from placing children with caretakers suited to meet their needs, producing chronic placement instability;

- That inadequate supervision and monitoring of private providers is impeding DCF from assuring minimally acceptable safety, permanency and well-being outcomes for all children;

- That an incomplete and unevenly distributed array of services is depriving foster children of critical medical, mental health, dental and other supports; and

- That inadequate caseworker and supervisor training is eroding the overall capacity of DCF to deliver minimally competent social work.

These and other such longstanding structural ailments far too often render individual case decisions moot because, regardless of their substantive merit, the DCF system is unable to

execute them in a timely or effective fashion.  Nevertheless, Defendants once again ignore the proverbial forest for the trees in seeking to divert attention from the structural shortcomings that daily are jeopardizing child safety and well-being.

Second, this motion is a reprise of Defendants' failed contention that class certification is improper unless Plaintiffs show that all children in DCF foster care have suffered like injuries resulting from a common cause.  Returning to this Court's apt metaphor of a "creaky building" into which Plaintiff Children are placed by DCF, Defendants seek to advance the extraordinary proposition that "the only potential way Plaintiffs could establish commonality in this metaphorical framework would be to demonstrate that the 'creaky building' had collapsed to the ground, injuring each of the 8,000 current class members in like fashion."  Defs.' Mem. of Law in Supp. of Mot. to Decertify Pl. Class, Dkt. No. 68, at 18.  ("Defs.' Br.")  This misguided proposition ignores settled law: even where absent class members have not suffered actual harm, class certification is proper if they are at risk of harm.  Plaintiffs have satisfactorily alleged, as this Court found in its Certification Order, multiple systemic ailments that expose all children in DCF foster care to a common threat of unconstitutional harm.

In analogizing to a cataclysmic building collapse, Defendants miss the central purpose of this lawsuit – to secure prospective injunctive relief in order to abate known and ongoing risks of harm *before* still more children needlessly suffer injury in DCF custody.  Plaintiff Children need not wait for the equivalent of a catastrophic building collapse to seek the judicial relief sought here, and Defendants' proposition to the contrary finds no support in either existing law or rudimentary justice.

## **ARGUMENT**

*Wal-Mart* provides no basis whatsoever to challenge this Court's Certification Order. Defendants' primary argument – that Plaintiff Children have failed to establish a common question of law or fact under Federal Rule of Civil Procedure 23(a)(2) – overlooks key differences between the legal claims and facts presented in *Wal-Mart* and those presented in the case at bar. Moreover, Defendants improperly ascribe to *Wal-Mart* "new" rules of law that, in truth, were already well-settled when this Court granted class certification. Finally, Defendants' reliance on *Wal-Mart*'s holding that the plaintiffs' claims for back pay had been improperly certified under Federal Rule of Civil Procedure 23(b)(2) is wholly misplaced, since Plaintiff Children here are seeking injunctive relief only, and not the monetary relief sought in *Wal-Mart*.

**I.     THE COMMON QUESTIONS OF LAW AND FACT UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(a)(2) ARE NOT CALLED INTO QUESTION BY *WAL-MART***

    **a.     *Wal-Mart* Is Inapposite to the Instant Case on Both the Facts and the Law**

Defendants would have this Court read *Wal-Mart* as altering the standards for class certification under Rule 23. In reality, *Wal-Mart* applied existing class certification standards to "one of the most expansive class actions ever." *Wal-Mart*, 131 S.Ct. at 2547. Omitted from Defendants' discussion of *Wal-Mart* is the central fact of that case: a plaintiff class potentially consisting of some one-and-a-half million plaintiffs employed in approximately 3,400 stores spread throughout the country claiming discriminatory treatment in individual employment decisions. *Id*. In this unique and perhaps even unprecedented context, the Supreme Court held that a mere showing that individual Wal-Mart store managers had wide discretion to make promotion and compensation decisions was inadequate to connect any uniform corporate policy to alleged individual acts of discrimination. *Id.* at 2553-57. The Court observed that since the

plaintiffs had failed to identify a "common mode of exercising discretion that pervades the entire company," there was no "glue" holding together the reasons for the individual employment decisions. On that basis, the Court reasoned that "[i]n a company of Wal-Mart's size and geographical scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction." *Id.* at 2552, 2554-55.

The instant action is vastly different. It challenges profound systemic flaws in the structure and central management of DCF, a unitary system which exercises custody over all members of the Plaintiff class. Plaintiffs' Complaint sets forth "highly detailed allegations" of pervasive, structural problems in the Massachusetts foster care system that "have resulted in specific harms to each named Plaintiff and that pose a continuing threat to the entire Plaintiff Class." *Connor B.*, 272 F.R.D at 294-95.[1] These pervasive, structural problems include "inadequate training and supervision of foster parents, the failure to properly investigate reports of neglect and abuse, delay in removing children from abusive homes, denial of essential educational and medical services, the shuttling of children among multiple placements, the failure to maintain adequate sibling visitation, and the inability to secure appropriate placements for adoption," *id.*, all of which subject the class of Plaintiff Children to harm and the ongoing risk of harm. Thus, applying the terminology from *Wal-Mart*, the "glue" that unites Plaintiffs' claims here is a set of systemic deficiencies that threaten harm to children because they undermine DCF's ability to timely and effectively implement social work decisions, whether sound or not.[2] *See M.D. v. Perry*, C.A. No. C-11-84, slip. op. at 2-3 (S.D. Tex. July 21, 2011)

---

[1] This Court further held that "Plaintiffs have satisfied the requirement of commonality by alleging that various flaws within DCF, outlined with specificity in the complaint, expose the entire Plaintiff class to an unreasonable risk of harm in violation of their constitutional rights." *Connor B.*, 272 F.R.D. at 295.

[2] Defendants' Motion to Decertify has not in any way undermined the clear allegations of the Complaint detailing specific deficiencies in the DCF system that are the common cause of the injuries suffered by the class of Plaintiff

(attached hereto as Ex. A) (holding that the *Wal-Mart* decision did not alter the outcome of the court's certification of class of abused and neglected children "as there are important distinctions between *Wal-Mart* and the case presently before the Court" and Plaintiff Children's "claimed injuries result from the common alleged deficiencies in the Texas foster care system," which act as the "glue" holding together the claims).

Additionally, *Wal-Mart* is inapposite here as it is a Title VII employment discrimination suit in which "the crux of the inquiry is the reason for a particular employment decision." *Wal-Mart*, 131 S.Ct. at 2552 (citation omitted, internal quotation marks omitted). In *Wal-Mart*, where plaintiffs sought to "sue about literally millions of employment decisions at once," the Court held that they must bridge the "conceptual gap," *id.* at 2553, between an individual's claim of a discriminatory employment decision and "the existence of a class of persons who have suffered the same injury as that individual" by either demonstrating a "biased testing procedure" or showing "significant proof" of a general policy of discrimination. *Id.* at 2552-53 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, 159 (1982)). Because the gravamen of the *Wal-Mart* complaint was that all of the "individual, discretionary personnel decisions" made by Wal-Mart managers were discriminatory, plaintiffs were required to prove common discriminatory intent. *Wal-Mart*, 131 S.Ct. at 2556. This framework is wholly inapplicable here where Plaintiffs are

---

Children. *See* Compl., Dkt. No. 1, ¶¶ 215-298. For example, Defendants argue that "Plaintiffs baldly assert that the Department 'fails to protect children from abuse and neglect in foster care,' … rather than asserting specifically that the Department has a practice of failing to examine CORI records for prospective foster parents, putting every class member at imminent risk of being placed in an unsafe, inappropriate placement." *See* Defs.' Br. at 6 (quoting Compl. ¶ 158(a)). Significantly, Defendants ignore an entire section of the Complaint asserting specific practices that DCF engages in that puts each class member at imminent risk of being placed in an unsafe or inappropriate placement. *See* Compl. ¶¶ 260-275 (alleging that DCF fails to assure foster home safety by failing to assure regular caseworker visits to children in foster homes or congregate care and failing to effectively monitor foster placements recruited, managed and supervised by private agencies); *see also id.* ¶ 215 (alleging that the harms described in ¶¶ 158-214 "result from Defendants' failure to address structural and systemic problems" as detailed in ¶¶ 216-298).

alleging constitutional deprivations flowing from structural infirmities within a unified child welfare system and where there is no requisite showing of common intent.

        b.      *Wal-Mart* Does Not Create a New Rule of Law that Alters the Class Certification Analysis in this Case

Defendants stretch the *Wal-Mart* decision beyond its limits in arguing that "new" rules of law were created.[3] To assert, as Defendants do here, that *Wal-Mart* effected a sea change in how courts must analyze class certification requirements – purportedly "announc[ing] a rejection of rubber-stamp or 'defer until later' analysis of class certification requirements" – is far off the mark. Defs.' Br. at 4. So too, is Defendants' self-serving and expansive interpretation of the *Wal-Mart* decision as dispensing with the well-recognized standard for commonality applied by this Court in its Certification Order. *See* Defs.' Br. at 4 n.1 ("Commonality is no longer a 'low bar' with 'permissive application.'") (quoting *Connor B.*, 272 F.R.D. at 293 and *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 17 (1st Cir. 2008)).

Noticeably absent from Defendants' contrived contentions regarding the holding in *Wal-Mart* are citations from the *Wal-Mart* decision. In lieu of case cites, Defendants allude to an emphasis on the importance of a "rigorous analysis" at the certification stage (*see* Defs.' Br. at 4) – a requirement that *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), established nearly thirty years ago. In truth, the *Wal-Mart* holding does not alter Supreme Court jurisprudence as to "what [] evidentiary burden Plaintiffs carry in attempting to satisfy the requirements of Rule 23" and does not disturb this Court's analysis of that question in its

---

[3] The *Wal-Mart* Court did declare new law on the issue of claims for monetary relief under Federal Rules of Civil Procedure 23(b)(2), a holding that is entirely inapplicable to the Plaintiff Class, who seek solely injunctive relief. *See infra* Part II.

Certification Order. *See Connor B.*, 272 F.R.D. at 293.[4] *Wal-Mart* followed *Falcon* in conducting a "rigorous analysis" of the class certification requirements and in the substantive test it applied for commonality. *See, e.g.*, *Wal-Mart*, 131 S.Ct. at 2552-53 ("This Court's opinion in *Falcon* describes how the commonality issue must be approached."); *id.* at 2557 n.10 (rejecting dissent's attempt to distinguish *Falcon*). In short, the law applied by *Wal-Mart* was far from novel and was in fact based on a case cited by both parties in briefing the initial class certification motion, and by this Court in its Certification Order.

       **c.**      **Defendants Are Recycling Arguments Not Supported by *Wal-Mart* And Already Raised and Rejected**

Defendants' motion recycles various arguments previously rejected by this Court, under the guise that *Wal-Mart* should alter the outcome. Defendants' fundamental premise – namely, that this lawsuit is not amenable to class treatment because it will purportedly require the Court to make individualized judgments about members of the Plaintiff Class – remains fatally flawed. *See* Defs.' Br. at 8-9 (arguing that Plaintiffs' substantive due process allegations will depend on an assessment of each child's "'individual needs' as assessed by his social worker"); *id.* at 9 (arguing that Plaintiffs' allegations regarding parent and sibling contact will "depend on the circumstances of each individual case"); *id.* at 9-10 (arguing that a "fact-based individualized inquiry" is necessary to resolve Plaintiffs' procedural due process claim). Defendants' original opposition to Plaintiffs' certification petition sounded these same notes, which were rejected by this Court. *See, e.g.*, Defs.' Opp'n to Pls.' Mot. for Class Certification, Dkt. No. 32, at 24 ("Certification Opp'n") (arguing that the question of whether foster children are constitutionally

---

[4] The quotation that Defendants reference in note 4 of their brief regarding "[c]ertification based simply on the assertions in the complaint" (Defs.' Br. at 6 n.4) fails to provide any basis for arguing that *Wal-Mart* has altered the standard for class certification. The quotation appeared nowhere in the *Wal-Mart* decision and was merely a statement from a law review article from which other unrelated portions were cited in the Court's discussion of commonality.

8

entitled to particular placements and services entails a "[h]ighly-[i]ndividualized [d]etermination"); *Connor B.*, 272 F.R.D. at 297.[5]

What Defendants want to ignore is that class certification is appropriate here because, regardless of individual circumstances, all members of this class are forced to live under the same dysfunctional system, subjecting all to the risk of harm.[6] *See, e.g.*, *D.G. v. Devaughn*, 594 F.3d 1188, 1195-6 (10th Cir. 2010); *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Because all class members are in the custody of DCF, they are subject to the same systemic deficiencies, and consequently there are numerous questions of fact and law common to all members of this class that "[could] generate common answers" that would resolve central issues in the lawsuit. *See Wal-Mart*, 131 S.Ct. at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).[7] For example, Plaintiffs' claim that Defendants' failure to assure foster home safety violates the Plaintiff Children's rights to be free from harm while in state custody under the due process clause of the Fourteenth Amendment is readily susceptible to resolution for the class as a whole and the "determination of its truth or falsity will resolve an issue that is central to the validity" of the lawsuit. *See Wal-Mart*, 131 S.Ct. at 2551. This claim depends on common contentions alleged in the Complaint, such as the allegations that DCF fails to assure regular caseworker visits to children in foster homes and congregate care or to effectively monitor foster care placements. *See* Compl., Dkt. No. 1, ¶¶

---

[5] Defendants also raised this argument in their Motion to Dismiss, *see* Defs.' Mem. in Supp. of Mot. to Dismiss, Dkt. No. 20, at 58-61, and it was rejected by this Court. *See Connor B. v. Patrick*, 771 F. Supp. 2d 142, 154-55 (D. Mass. 2011).

[6] Plaintiffs incorporate herein Part III.B. of Pls.' Reply Mem. of Law in Supp. of Class Certification (Dkt. No. 39) ("Pls.' Reply").

[7] Plaintiffs have detailed numerous questions of law and fact common to the class. Plaintiffs incorporate herein Part III.A.1.b. of the Mem. in Supp. of Pls.' Mot. for Class Certification and Appointment of Class Counsel (Dkt. No. 4) ("Pls.' Mem.") and Part II of Pls.' Reply.

260-75. Such claims go far beyond a naked allegation that "each member of the class has 'suffered a violation of the same provision of law.'" *See* Defs.' Br. at 18 (quoting *Wal-Mart*, 131 S.Ct. at 2551).

Moreover, in light of this Court's previous holding that Plaintiffs have sufficiently alleged numerous systemic ailments within DCF that "expose the entire Plaintiff class to an unreasonable risk of harm in violation of their constitutional rights," *Connor B.*, 272 F.R.D. at 295, Defendants' reprised argument that Plaintiffs have failed to demonstrate that the class members have suffered the "same injury" is spurious. Defs.' Br. at 16. *See also* Certification Opp'n at 17-18. As the Court has earlier noted, in response to this same argument, "actual injury to absent class members need not be proven" at the class certification stage where class members can show that they are all *subject* to the same harm. *Connor B.*, 272 F.R.D. at 295 (citing, *inter alia*, *Baby Neal*, 43 F.3d at 56 ("[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice.") (emphasis in original); Fed. R. Civ. P. 23(b)(2), 1966 Amendment Advisory Committee Note (stating that certification is appropriate if the defendant's action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class").

Defendants are incorrect in contending that the "actual injury" rule was overturned by *Wal-Mart*. Indeed, nowhere in the text of *Wal-Mart* can support for such a proposition be found. Defendants argue in a footnote that even if *Baby Neal* "relaxed somewhat the 'same injury' test," the *Wal-Mart* decision "explains that '[c]ommonality requires the plaintiff to demonstrate that the class members 'have all suffered the same injury.'" Defs.' Br. at 17 n.18. However, Defendants' contention is incorrect. First, *Wal-Mart* gives no indication that it intended this

phrase to relate to the issue of demonstrating *actual* injury.  Second, the language Defendants cite in *Wal-Mart* is in fact language quoted directly from the 1982 *Falcon* case.  *See Wal-Mart*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).  Such language, then, can hardly impact on the 1994 holding of *Baby Neal* that commonality can be met by demonstrating that all class members are *subject* to the same harm, even if they have not all suffered the same *actual* harm.  Nor can *Wal-Mart*'s statement that commonality requires more than demonstrating that all class members have suffered a "violation of the same provision of law" be read to speak to – let alone overrule – the actual injury rule.  *See* Defs.' Br. at 18 n. 20.

     Finally, given the undeniable fact that every member of this class is being exposed to unreasonable risks due to structural infirmities in the DCF system itself, Defendants' misinterpretation of the Court's "creaky building" metaphor in no way demonstrates a lack of commonality within the Plaintiff Class.  Whether some children are "being hurt because they're getting hit on the head with a brick" while others may be "falling through the floor" or "having nightmares," *see* Feb. 4, 2011 Hr'g Tr., Dkt. No. 46, 30:5-9, all of the children have been placed by DCF in the same creaky building and are daily susceptible to suffering all the harms that metaphorical building threatens.  *Wal-Mart* cannot lead to the illogical conclusion Defendants advance, namely, that Plaintiffs can establish commonality only by demonstrating that the building "had collapsed to the ground, injuring each of the 8,000 current class members in like fashion."  *See* Defs.' Br. at 18.  Class certification standards simply do not require any showing of a single catastrophic event – such as a building collapse – before similarly situated plaintiffs

can seek prospective injunctive relief on a class-wide basis. *See, e.g.*, *D.G.*, 594 F.3d at 1192, 1194; *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997); *Baby Neal*, 43 F.3d at 54, 56.[8]

## II. *WAL-MART'S* LANGUAGE CONCERNING FEDERAL RULE OF CIVIL PROCEDURE 23(b)(2) DOES NOT UNDERMINE THE HOLDING THAT PLAINTIFF CHILDREN HAVE MET THIS RULE

Plaintiffs here seek solely injunctive relief. *See* Compl. at 69-71. Yet Defendants want to re-argue class standing on the basis of *Wal-Mart's* holding that claims for monetary relief may not be certified under Federal Rules of Civil Procedure 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief," *Wal-Mart*, 131 S.Ct. at 2557. They base this flawed argument on one quote from *Wal-Mart*: "*The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'*" Defs.' Br. at 19 (quoting *Wal-Mart*, 131 S.Ct. at 2557). This is hardly a springboard from which to challenge the Rule 23(b)(2) analysis this Court already performed. The statement is not novel to *Wal-Mart*; in fact, it is embodied in the language of Rule 23(b)(2) which provides that "final injunctive relief" must be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In no way does such language undermine the Court's conclusion that certification of the Plaintiff Class is warranted under Rule 23(b)(2) and, indeed, Defendants are here revisiting a principle already raised and rejected by this Court.[9] *See Connor B.*, 272 F.R.D. at 297-8 (acknowledging Defendants' arguments that Plaintiffs' allegations entail "highly-individualized determination[s], making the cases ill-suited to class-wide injunctive

---

[8] Defendants also purport to challenge commonality on the basis that that the number of pages that Defendants have "been forced to collect" in the course of discovery demonstrates that the Plaintiffs' allegations are "improperly abstruse." *See* Defs.' Br. at 14-15. The volume of Plaintiffs' document production has absolutely no bearing on the question of commonality.

[9] Plaintiffs incorporate herein Part III.A.2. of Pls.' Mem. and Part III of Pls.' Reply.

relief" but holding "[n]otwithstanding Defendants' arguments to the contrary" that certification under Rule 23(b)(2) was proper). Nor are Defendants correct in asserting that "[n]o single injunction or declaratory judgment could provide relief to each member of this class," Defs.' Br. at 19, as this Court has already considered, recognizing, quite correctly, that Plaintiffs' Prayer for Relief includes "several forms of injunctive relief that would benefit the entire class, including stricter limits on caseworker caseloads and increased visitation by caseworkers of children in foster homes." *Connor B.*, 272 F.R.D. at 297.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion to decertify the plaintiff class be denied.

DATED: September 21, 2011        Respectfully submitted:


By:  */s/ Rachel Brodin Nili*
    Marcia Robinson Lowry, *admitted pro hac vice*
    Sara Michelle Bartosz, *admitted pro hac vice*
    Laurence D. Borten, *admitted pro hac vice*
    Rachel Brodin Nili (BBO# 666227)
    CHILDREN'S RIGHTS
    330 Seventh Avenue, Fourth Floor
    New York, New York 10001
    Phone: (212) 683-2210
    Facsimile: (212) 683-4015
    *mlowry@childrensrights.org*
    *sbartosz@childrensrights.org*
    *lborten@childrensrights.org*
    *rnili@childrensrights.org*

By:  */s/  Jonathan D. Persky*
    Daniel J. Gleason (BBO# 194900)
    Mary K. Ryan (BBO# 435860)
    Jonathan D. Persky (BBO# 666651)
    NUTTER MCCLENNEN & FISH, LLP

        Seaport West
        155 Seaport Boulevard
        Boston, MA 02210-2604
        Phone: (617) 439-2000
        Facsimile: (617) 310-9000
        *dgleason@nutter.com*
        *mryan@nutter.com*
        *jpersky@nutter.com*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on September 21, 2011, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/  Rachel Brodin Nili*

                                      Rachel Brodin Nili