UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
CONNOR B., by his next           )
friend, ROCHELLE VIGURS,         )
ET AL.,                          )
          Plaintiffs             )
                                 )
     v.                          ) C.A. No. 10-cv-30073-MAP
                                 )
DEVAL L. PATRICK, ET AL.,        )
          Defendants             )
```

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DECERTIFY PLAINTIFFS' CLASS AND
DEFENDANTS' MOTION TO STAY DISCOVERY PENDING A RULING ON
THEIR MOTION TO DECERTIFY THE CLASS
(Dkt. Nos. 66, 67)

November 10, 2011

PONSOR, D.J.

I. INTRODUCTION

This case is before the court on Defendants' Motion to Decertify Plaintiffs' Class Pursuant to Fed. R. Civ. P. 23(c), (Dkt. No. 66), and Defendants' Motion to Stay Discovery Pending a Ruling on their Motion to Decertify the Class, (Dkt. No. 67). On February 28, 2011, the court allowed Plaintiffs' Motion to Certify Class and Appoint Class Counsel, (Dkt. No. 2), defining the class as "all children who are now or will be in the foster care custody

of the Massachusetts Department of Children and Families as a result of abuse or neglect." Connor B. ex rel. Vigurs v. Patrick, 272 F.R.D. 288, 291 (D. Mass. 2011). Fed. R. Civ. P. 23(f) gives litigants the right to appeal an order granting class certification within fourteen days. Defendants did not exercise that right. On June 20, 2011, the U.S. Supreme Court handed down its opinion in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011). Defendants filed their motion to decertify on September 6, 2011, based upon the holding in that case. For the reasons stated below, the court finds that Wal-Mart does not warrant revisiting the court's previous order granting class certification.

At times during the motion hearing, Defendants appeared to argue that the court should not only analyze the impact of the Wal-Mart decision on its original certification order, but should also reexamine the general appropriateness of that order. The court will not do so for two reasons. First, this approach would undermine the fourteen-day deadline to appeal a class certification order and would essentially give an unhappy litigant the power to seek

reconsideration of an order at any time. Second, and more fundamentally, the court remains convinced that the original certification of the class is sound.

At the conclusion of the motion hearing, the court indicated that it would deny Defendants' Motion for Decertification (Dkt. No. 66). This memorandum will set forth the court's rationale. The court will also deny Defendants' Motion to Stay Discovery Pending Resolution of their Motion to Decertify (Dkt. No. 67), as moot.

## II. BACKGROUND

The Plaintiffs' class consists of all children who are or will be in the custody of the Massachusetts Department of Children and Families ("DCF") as a result of abuse or neglect by their parents. Plaintiffs allege that overarching systemic deficiencies within DCF expose the approximately 8,500 children in DCF custody, as well as children who will be in DCF custody in the future, to potential harm. These deficiencies include among other things: excessive caseloads, an insufficient array of foster family homes, inadequate supervision and monitoring of private providers, an incomplete and unevenly distributed

array of services, and inadequate caseworker and supervisor training. The six named representatives suffered alleged harms as a result of these deficiencies, which Plaintiffs claim are representative of the harms faced by all children in DCF custody. The court's earlier order granting class certification detailed these alleged harms and the court will not review the allegations here. See Connor B., 272 F.R.D. at 291-92.

## III. DISCUSSION

Fed. R. Civ. P. 23(a) permits representative parties to bring suit on behalf of a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The representative parties must also satisfy one of the additional requirements set out in Fed. R. Civ. P. 23(b). In this case, the court granted class certification under Rule 23(b)(2), which requires a showing that "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants now request the court to decertify Plaintiffs' class, arguing that <u>Wal-Mart</u> changed the standards for class certification and calling for a re-examination of the court's original certification order. The court disagrees with Defendants' characterization of <u>Wal-Mart</u>'s impact on this case and declines to reexamine its original analysis.

A. <u>The Wal-Mart Decision</u>.

   1. <u>The Holding in Wal-Mart</u>.

In <u>Wal-Mart</u>, the U.S. Supreme Court considered the certification of a class consisting of approximately one and a half million current and former female employees of Wal-Mart who alleged that their local supervisors' discretion over pay and promotions violated Title VII by discriminating against women.  131 S.Ct. at 2547.  The <u>Wal-Mart</u> plaintiffs did not allege that Wal-Mart had an express corporate policy of discriminating against women.  Instead, they argued that

5

Wal-Mart's "strong and uniform 'corporate culture'" permitted bias against women to "infect" the decision making of thousands of individual store supervisors, who had wide discretion over pay and promotions.  Id. at 2548.  The plaintiffs sought injunctive and declaratory relief, as well as an award of backpay.  Id. at 2547.

In a five to four decision, the Supreme Court concluded that class certification was inappropriate in Wal-Mart, because plaintiffs failed to show that "there are questions of law or fact common to the class," as required by Rule 23(a)(2).  Id. at 2554-57.  According to the Court, to meet the commonality requirement, a plaintiff had to show that class members "suffered the same injury," which required more than simply suffering a violation of the same provision of law.  Id. at 2551 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  To make such a showing, a plaintiff had to demonstrate that the class claims "depend upon a common contention" and that determining the truth or falsity of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  Dissimilarities within the proposed class

would be potentially detrimental to satisfying the commonality requirement.  Id.

The Court explained that, where plaintiffs were not alleging an explicit policy of discrimination, one way to meet the commonality requirement was by offering "significant proof" of a "general policy of discrimination." Id. at 2553.  The Court held that such proof was absent in the case before it.

> The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's 'policy' of <u>allowing discretion</u> by local supervisors over employment matters. . . .
>
> . . . In such a company, demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.

Id. at 2554 (emphasis in original).  The Court also noted that

> "[class members] held a multitude of different jobs, at different levels of Wal-Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed."

Id. at 2557 (quoting Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 652 (9th Cir. 2010) (Kozinski, J. dissenting)).

These differences were too great to satisfy the commonality requirement.

In the second part of its decision, the Court held unanimously that plaintiffs' claims for backpay were also improperly certified under Rule 23(b)(2). According to the Court, claims for "<u>individualized</u> relief" do not meet the requirements of Rule 23(b)(2). <u>Id.</u> (emphasis in original). Consequently, the Court held that claims for monetary relief that are not incidental to injunctive or declaratory relief -- including plaintiffs' claims for backpay -- cannot be certified under Rule 23(b)(2). <u>Id.</u>

2. <u>Application of Wal-Mart to the Facts</u>.

Defendants contend that <u>Wal-Mart</u> created a new standard that courts must apply when analyzing class certification requirements, and thus this court must reconsider its original certification order under the new standard. First, Defendants argue that, in light of <u>Wal-Mart</u>, Plaintiffs fail to meet the commonality requirement under Rule 23(a)(2) because they have not established the existence of any common question. Second, Defendants argue that Plaintiffs do not meet the additional requirements under Rule 23(b)(2),

because no single injunction or declaratory judgment could provide relief to each member of the class.

However, the decision in Wal-Mart, while generally relevant, has little explicit application to this much different case. Contrary to Defendants' contention, the Wal-Mart decision did not change the law for all class action certifications. Instead, it provided guidance on how existing law should be applied to expansive, nationwide class actions that are very different from the case currently before the court.

    a. Standard of Analysis.

Defendants rely on one passage from the Wal-Mart decision to support their contention that Wal-Mart rejected previous class action precedent by requiring a higher standard of analysis: "We recognized in Falcon that . . . certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Id. at 2551 (quoting Falcon, 457 U.S. at 160-61). However, as this quote in its entirety makes clear, the "rigorous analysis" standard was not novel to Wal-Mart. Instead, the Court clearly affirmed

the standard set by its previous decision in Falcon. Falcon, 457 U.S. at 160-61; see also Wal-Mart, 131 S.Ct. at 2557, n.10 (rejecting the dissent's attempt to distinguish Falcon). The cases this court relied on in its original certification order were decided after Falcon and relied on Falcon when determining what standard of analysis to apply. See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d at 17. Thus, Wal-Mart does not warrant re-analyzing the certification order under any new standard of law.

Defendants further argue that Wal-Mart compels this court to go beyond the pleadings, and perhaps conduct an evidentiary hearing, before granting class certification. This court declined to do this in its original order. However, the Supreme Court at no point in its decision implied that rigorous analysis will always require courts to go beyond the pleadings. Wal-Mart, 131 S.Ct. at 2551 ("Frequently . . . 'rigorous analysis' will entail some overlap with the merits of the plaintiff's claim."). It stated only that in the case before it "proof of commonality necessarily overlaps with respondents' merits contention

that Wal-Mart engages in a pattern or practice of discrimination . . . because, in resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for a particular employment decision.'"  Id. at 2552.  This rationale does not apply here where the alleged constitutional violations flow from structural infirmities within a unified child welfare system and where there is no requisite showing of common intent.  The court remains convinced that, while a preliminary evidentiary hearing may be required before certifying some class actions, it is not required in this case.  See Connor B., 272 F.R.D. at 294.

    b. Commonality.

Defendants next argue that, pursuant to the holding in Wal-Mart, the dissimilarities among the 8,500 class members in this case -- including differences in social worker assignments, goals, physical and mental health needs, and length of stay in DCF custody -- make class certification improper, because there is no common question that could generate a common answer to resolve an issue central to the litigation.  This case, according to Defendants, is analogous to Wal-Mart because the class members' alleged

harms are caused by individual social workers who exercise wide discretion in determining what is in the best interest of the child rather than by a uniform organization policy that dictates how discretion should be exercised. Furthermore, Defendants argue that each decision requires an assessment of the child's individual needs.  In light of these dissimilarities and discretionary decisionmaking, Defendants claim that Plaintiffs have not provided the "glue" to hold these individual determinations together and thus fail the commonality requirement.  <u>Wal-Mart</u>, 131 S.Ct. at 2552 ("Without some glue holding the alleged <u>reasons</u> for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question <u>why was I disfavored</u>." (emphasis in original)).

    This argument, however, is largely identical to the argument this court rejected in its original certification order.  <u>See</u> <u>Connor B.</u>, 272 F.R.D. at 295 ("Plaintiffs have satisfied the requirement of commonality by alleging that various flaws within DCF, outlined with specificity in the complaint, expose the entire Plaintiff class to an

unreasonable risk of harm in violation of their constitutional rights."). Wal-Mart has no effect on that decision.

Unlike the plaintiffs in Wal-Mart, who did not allege any specific, overarching policy of discrimination, Plaintiffs have alleged specific and overarching systemic deficiencies within DCF that place children at risk of harm. These deficiencies, rather than the discretion exercised by individual case workers, are the alleged causes of class members' injuries, because they undermine DCF's ability to timely and effectively implement case workers' decisions. These systemic shortcomings provide the "glue" that unites Plaintiffs' claims. Thus, this class of 8,500 children within the custody of a single agency in a single state that suffers from the same overarching systemic deficiencies is fundamentally different from the class in Wal-Mart, which consisted of one and a half million class members spread out across the country in thousands of stores with varying regional policies. See M.D. v. Perry, C.A. No. C-11-84, Slip. Op. at 2-3 (S.D. Tex. July 21, 2011) ("Whereas 'the respondents [in Wal-Mart] wish[ed] to sue about literally

millions of employment decisions at once,' which occurred all around the nation, here Plaintiffs' claimed injuries result from the common alleged deficiencies in the Texas foster care system.  Those alleged deficiencies are the 'glue' holding the claims together here.  Plaintiffs have much more in common then did the million-plus, nationwide class at issue in Wal-Mart." (internal citation omitted)). As such, Wal-Mart's commonality analysis is easily distinguishable from this case and does not disturb the court's original order.

      c. Injunctive or Declaratory Relief.

Finally, Defendants argue that, under Wal-Mart, Plaintiffs have also failed to meet the requirements of Rule 23(b)(2) because no single injunctive or declaratory relief is possible where each class member has different needs for DCF services, placements, and visitation.  Defendants rely on Wal-Mart for the proposition that "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted.'"  Wal-Mart, 131 S.Ct. at 2557 (internal citation omitted).

This proposition, however, is not novel to Wal-Mart and

14

does not change the Rule 23(b)(2) analysis this court already performed in its original certification order. Any new rules of law that <u>Wal-Mart</u> may have created for Rule 23(b)(2) class actions were limited to its specific holding regarding the propriety of claims for monetary relief. <u>Id.</u> at 2557. Plaintiffs' claims in this case are limited to injunctive relief. The passage in <u>Wal-Mart</u> regarding injunctive and declaratory relief that Defendants cite in support of their argument for decertification only affirmed the pre-<u>Wal-Mart</u> class certification standards that this court used to reach its earlier conclusion.

Thus, because the facts and demands for relief in <u>Wal-Mart</u> are readily distinguishable from the case at hand, Defendant's argument that <u>Wal-Mart</u> calls for reconsideration of the court's original certification order is unpersuasive.

B. <u>Reexamining Original Certification</u>.

As noted in the introduction, while Defendants couch their arguments in terms of the <u>Wal-Mart</u> decision, at times Defendants seem to ask the court to expand its analysis and look once more to the original rationale for class certification. Doing so would be improper for two reasons.

1. <u>Deadline for Appeal</u>.

First, reexamining the merits of the original certification order would undermine the deadline to appeal a class certification order set by the Federal Rules. Rule 23(f) provides that litigants may appeal an order granting or denying class certification by filing a petition within fourteen days of the order's entry. The court issued its class certification order in this case on February 28, 2011, and Defendants chose not to appeal. Now, nearly seven months after the court entered its order, Defendants seek the substantive equivalent of an appeal -- though under the label of a motion to decertify -- by asking the court to reconsider the original order. Allowing litigants to file a motion to decertify at any time during the litigation, even when no subsequent case law or new facts have had any impact on the original rationale, would render Rule 23(f) meaningless.

2. <u>Substantive Analysis</u>.

Second, and more importantly, even if the court undertook the analysis that Defendants request, it remains clear that the original certification was appropriate.

Defendants contest the court's findings with respect to the Rule 23(a) commonality and typicality requirements and the Rule 23(b)(2) requirement for a single injunctive or declaratory relief.  However, as the court previously determined, the specific and detailed allegations in the complaint are sufficient to satisfy these requirements.

The court determined that, although it must conduct a "rigorous analysis" before certifying a class, it was not required to go beyond the pleadings in this specific case. <u>Connor B.</u>, 272 F.R.D. at 293-94.  The court found that the complaint

> set forth highly detailed allegations . . . that outline pervasive alleged problems in the Massachusetts foster care system -- inadequate training and supervision of foster parents, the failure to properly investigate reports of neglect and abuse, delay in removing children from abusive homes, denial of essential educational and medical services, the shuttling of children among multiple placements, the failure to maintain adequate sibling visitation, and the inability to secure appropriate placements for adoption -- as well as the resultant harms.

<u>Id.</u> at 294-95.  Because these alleged failures resulted in harms to the named Plaintiffs and created an unreasonable risk of harm to the entire Plaintiff class, both of which

17

Plaintiffs have also detailed with specificity in their complaint, Plaintiffs have satisfied the commonality requirement. Id. at 295.

With regard to typicality, the court remains convinced that, although all class members must "suffer the same injury," Falcon, 457 U.S. at 156, the harms suffered by the named plaintiffs may differ in some respects from those suffered by unnamed plaintiffs. Connor B., 272 F.R.D. at 296; see also Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 58 (3d Cir. 1994) ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." (quoting Falcon, 457 U.S. at 157-59)). As the court found in its original order, Plaintiffs have alleged specific systemic policies or practices that expose the entire class to the same unreasonable risk of harm and, thus, have satisfied the typicality requirement. Connor B., 272 F.R.D. at 297.

Finally, contrary to Defendants' contention, "Plaintiffs have proposed several forms of injunctive relief

that would benefit the entire class, including stricter limits on caseworker caseloads and increased visitation by caseworkers of children in foster homes.  Such prospective injunctive relief is fully consistent with Rule 23(b)(2) . . . ." Id.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Decertify the Plaintiffs' Class Pursuant to Fed. R. Civ. P. 23(c), (Dkt. No. 66), is hereby DENIED.  Defendants' Motion to Stay Discovery Pending a Ruling on their Motion to Decertify the Class, (Dkt. No. 67), is also hereby DENIED, as moot.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge